IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,      *
       Plaintiff,      *

v.      *    CRIMINAL NO.: WDQ-13-0419

    *

LINCOLN NORMANDO MOQUETE,
       Defendant.      *

    *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Lincoln Normando Moquete was charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine,[1] and possession with intent to distribute five kilograms or more of cocaine.[2] ECF No. 26. Pending are Moquete's motions to suppress tangible and derivative evidence, ECF No. 53, and to suppress his statement.[3] A hearing was held on September 14, 2015. Trial began the same day. ECF No. 52. For the following reasons, the motions will be denied.

---

[1] 21 U.S.C. § 846 (2006).

[2] 21 U.S.C. § 841 (2006).

[3] Moquete orally moved to suppress his statement at the hearing.

I    Background[4]

In March 2010, an alleged co-conspirator of the defendant was stopped by police officers on I-95 in Maryland. ECF No. 60-1 at 8. A canine alerted to the presence of narcotics. Officers found 13 kilograms of cocaine in the car. *Id.* The cocaine was packaged into bricks and placed in bags. *Id.* Moquete's fingerprints were found on the packages. *Id.*

On August 19, 2014, a federal grand jury indicted Moquete for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(2). ECF No. 26. On August 20, 2014, Magistrate Judge Beth P. Gesner issued a warrant for Moquete's arrest. ECF No. 29.

On November 10, 2014, DHS Special Agents Milton Lynn and James Stull, and additional law enforcement officers, arrested Moquete at John F. Kennedy International Airport ("JFK") as he attempted to board a flight from New York to the Dominican Republic. ECF No. 60-1 at 8. During a search of Moquete's

---

[4] The facts are from Moquete's motion to suppress tangible and derivative evidence, ECF No. 53, the government's response and the affidavit in support of a search warrant, appended to the government's response, ECF Nos. 60, 60-1, and Department of Homeland Security ("DHS") Special Agent James Stull's testimony at the motions hearing ("Hr'g").

person officers found two Apple iPhones. *Id.* at 8-9; *see also* ECF No. 53 at 1.

After his arrest, Agent Lynn read Moquete his *Miranda* rights; Moquete invoked his rights to remain silent and to counsel. Hr'g. Moquete was then taken to DHS's JFK office for fingerprinting and processing. *Id.* While awaiting transfer to the U.S. Marshal, Moquete and Agent Stull discussed baseball. *Id.* Agent Stull sat about two feet from Moquete, who was handcuffed. *Id.* According to Agent Stull, during a lull in conversation Moquete allegedly said to himself, in English, "that he had fallen in with a bad crowd and . . . made a mistake previously." *Id.* The next day, Agent Stull wrote down Moquete's statement. *Id.* Agent Stull was "about 99 percent" sure that he had recalled Moquete's exact words. *Id.*

On January 22, 2015, Magistrate Judge Timothy J. Sullivan issued a search and seizure warrant authorizing the search of the iPhones for records related to violations of 21 U.S.C. §§ 841 and 846 and evidence about the user or owner of the iPhones. ECF No. 60-1 at 2, 4.

On January 30, 2015, Moquete moved to suppress tangible and derivative evidence seized in connection with his arrest. ECF No. 53. On August 27, 2015, the government opposed the motion.[5]

---

[5] Moquete was instructed to file any reply by September 8, 2015; to date, Moquete has not replied.

On September 14, 2015 a hearing was held. That day, Moquete orally moved to suppress his statement. Hr'g.

II. Analysis

A. Tangible and Derivative Evidence

Moquete asserts that his arrest and subsequent search violated his Fourth Amendment rights. ECF No. 53 at 1. The government asserts that the search occurred pursuant to the execution of a valid arrest warrant; thus, Moquete has not established a Fourth Amendment violation. ECF No. 60 at 2.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," U.S. Const. amend IV, a right necessary to the functioning of a free and open society, see *Florida v. Riley*, 488 U.S. 445, 457 (1989) (Brennan, J. dissenting). Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few ... exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). In *Chimel v. California*, 395 U.S. 752, 757-58 (1969), the Supreme Court recognized an exception to the warrant requirement for searches of an arrestee's person and

4

immediate wingspan.[6]  Such searches assure the dual purposes of officer safety and the need to preserve evidence.  Id. at 781.

However, it is a "'bright line rule' of constitutional law"[7] that "[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search."[8]

Moquete has not shown that his arrest was illegal.  He was arrested pursuant to an arrest warrant; thus, the search of his person incident to that arrest was proper.  Additionally, officers obtained a search warrant authorizing the search of Moquete's iPhones.  Accordingly, items found during that search and relevant data recovered from the iPhones are admissible. See Chimel, 395 U.S. at 757-58; Riley v. California, 134 S. Ct. 2473, 2485, 2488 (2014) (police must obtain a search warrant before searching a cellphone's contents).  Accordingly,

---

[6] See also United States v. Bullard, 645 F.3d 237, 245 (4th Cir. 2011) (search incident to arrest was proper when officers had probable cause to arrest the defendant); United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.") (quoting United States v. Robinson, 414 U.S. 218(1973)).

[7] Id. (quoting United States v. Porter, 738 F.2d 622, 627 (4th Cir. 1984) (en banc)).

[8] Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 35, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)).

Moquete's motion to suppress tangible and derivative evidence will be denied.

B.   Moquete's Statement

At the hearing, Moquete moved to suppress his statement that "he had fallen in with a bad crowd and . . . made a mistake previously." Hr'g. Moquete asserts that the statement lacks reliability. Id. The government asserts that Moquete's argument goes to the statement's weight, not admissibility. Id.

To be admissible, a defendant's statement must have been obtained in compliance with two provisions of the Fifth Amendment: the right to due process, and the privilege against self-incrimination.

"A statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997), cert. denied, 522 U.S. 874 (1997). The test for determining whether a statement is voluntary under the Due Process Clause is "whether [it] was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Id. (internal quotation marks omitted). Coercive police activity is a "necessary predicate" to the finding of Due Process Clause involuntariness. Id. (internal quotation marks omitted). The proper inquiry is whether the defendant's "will

has been overborne or his capacity for self-determination critically impaired." Id. (internal quotation marks omitted). "[C]ourts must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id. at 781 (internal quotation marks omitted).

To protect a suspect's right against self-incrimination, police must provide Miranda warnings[9] before subjecting him to custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). A suspect is "'in custody' for Miranda purposes either if he has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." United States v. Pope, 212 F. App'x 214, 218 (4th Cir. 2007) (quoting United States v. Sullivan, 138 F. 3d 126, 130 (4th Cir. 1998)). Interrogation is "words or actions on the part of police officers . . . that they should have known were reasonably likely to elicit an incriminating response." See Rhode Island v. Innis, 446 U.S. 291, 302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

When a suspect in custody has invoked his right to counsel, he "is not subject to further interrogation by the authorities

---

[9] Police must warn the suspect that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 68 L.Ed.2d 378 (1981).

"If the suspect is not subjected to 'official' interrogation, however, the Fifth Amendment is not implicated." *United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007). "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985) (internal citation and quotation marks omitted).

After his arrest, Moquete was in custody for *Miranda* purposes. *See Pope*, 212 F. App'x at 218. However, there is no evidence of coercive police activity. Additionally, there is no evidence that he was interrogated. *See Rhodes*, 779 F.2d at 1032. Moquete's contention that the statement is unreliable goes to its weight, not its admissibility. *See, e.g., United States v. Jones*, 238 F.3d 416, 2000 WL 1719502, at *1 (4th Cir. 2000)(unpublished table opinion)(Petitioner's arguments about his custodial "statements' reliability go more properly to the weight to be afforded the evidence by the jury than to their admissibility"). Accordingly, Moquete's motion to suppress his statement will be denied.

8

III. Conclusion

For the reasons stated above, Moquete's motions will be denied.

9/15/15
_____
Date

_____
William D. Quarles, Jr.
United States District Judge