IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LINCOLN NORMANDO MOQUETE, | * |
| Petitioner, | Criminal No. RDB-13-0419 |
| v. | Civil No. RDB-17-3228 |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

On September 18, 2015, a jury convicted Petitioner Lincoln Normando Moquete of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, 21 U.S.C. § 846, and possession with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 841. (ECF Nos. 26 and 80.) On December 15, 2015, Petitioner was sentenced to 144 months to run concurrent on each count. (ECF No. 100.) Petitioner subsequently appealed his conviction, raising several arguments, which the United States Court of Appeals for the Fourth Circuit denied. (ECF Nos. 102 and 115); *see also United States v. Moquete*, 669 F. App'x 179 (4th Cir. 2016).

On November 1, 2017, Moquete, now incarcerated at FCI Williamsburg in Salters, South Carolina, filed this action to vacate his sentence under 28 U.S.C. § 2255.[1] (ECF No. 118.) The Government responded in opposition to Moquete's motion to vacate. (ECF No. 120.) Having reviewed the parties' submissions, this Court finds that no hearing is

---

[1] Upon filing of the subject Motion to Vacate, this case was reassigned to the undersigned on November 2, 2017 as the presiding Judge William D. Quarles has retired from this Court.

1

necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Petitioner's Motion (ECF No. 118) is DENIED.

**BACKGROUND**

On March 9, 2010, Maryland State Police observed a co-conspirator of the Petitioner operating a rental car in excess of the posted speed limit on I-95 in Cecil County, Maryland. (ECF No. 60-1 at 8.) A canine narcotics detector alerted to the presence of narcotics in the vehicle. (*Id.*) A subsequent search of the vehicle produced a duffle bag containing thirteen kilograms of cocaine parceled into two bundles of bricks—one containing eight kilograms of cocaine and another containing five kilograms of cocaine. (*Id.*) The individual bricks were wrapped in plastic or plastic bags and then wrapped together in plastic wrap. (*Id.*) The cocaine was subjected to a latent print analysis through the Integrated Automated Fingerprint Identification System ("IAFIS") wherein an examiner identified nineteen fingerprints belonging to Petitioner. (ECF No. 110 at 175.)

Petitioner's co-conspirator ultimately pled guilty to federal drug offenses and was sentenced to 120 months' imprisonment. (ECF No. 109 at 62–63.) Petitioner's co-conspirator later inculpated another co-conspirator. (*Id.* at 66–67.) This additional co-conspirator identified Petitioner as his source. (ECF No. 110 at 228.) Petitioner retained private counsel (ECF No. 51), and the case went to trial on September 14, 2015. (ECF No. 66.) Both co-conspirators testified against Petitioner at trial. (ECF No. 110.) After a five-day trial, the jury convicted Petitioner of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841.

(ECF No. 81.) On December 15, 2015, this Court sentenced Petitioner to 144 months of imprisonment to run concurrent on each count and five years of supervised release. (ECF No. 100.) On appeal, the Fourth Circuit affirmed Petitioner's conviction. (ECF No. 115.) On November 1, 2017, Petitioner moved to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 118.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1962)).

## ANALYSIS

The Petitioner raises the following claims in his Motion to Vacate: (1) ineffective assistance of counsel due to counsel's failure to proffer expert witness testimony to rebut the Government's fingerprint evidence; and (2) ineffective assistance of counsel due to counsel's failure to have a learned treatise read into the record to rebut the Government's fingerprint evidence. (ECF No. 118-1.) Petitioner argues that, at a minimum, an evidentiary hearing is required to resolve this Motion. (*Id.*)

A freestanding claim of ineffective assistance of counsel may properly be asserted for

3

the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). In order to establish ineffective assistance of counsel, Petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, Petitioner must show that his counsel's performance was deficient such that it fell below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that an attorney's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that his counsel's performance was prejudicial, meaning the defendant was "depriv[ed] . . . of a fair trial." *Id.* at 687. To demonstrate such prejudice, Petitioner must show there was a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding[s] would have been different." *Id.* at 694. Both of these prongs must be satisfied for the Petitioner to obtain the relief he is seeking. *Id.* at 687.

### I. Failure to Proffer Expert Witness Testimony

Petitioner argues that counsel was ineffective for failing to hire an expert to rebut the Government's fingerprint evidence. Petitioner claims that an expert was needed to "present evidence to the jury on how fingerprint impressions could have been made on the packaging around the cocaine without actual, direct contact by Moquete." (ECF No. 118-1.) According to Petitioner, such expert testimony would have "given the jury pause about Moquete's culpability." (*Id.*) This argument constitutes an attack on counsel's trial strategy. *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (characterizing trial counsel's decision not to call a defense witness as a "strategic decision" and affording "enormous deference") (quoting *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994)); *see also Byram v. Ozmint*,

339 F.3d 203, 209 (4th Cir. 2003). When attacking a strategic choice made during trial, a petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). In deciding whether Petitioner has met this burden, this Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight." *Id.*

Although counsel did not proffer expert testimony to rebut the Government's fingerprint evidence, counsel did raise the issue of the potential lateral inversion of fingerprints. Counsel questioned the Government's second expert about laterally-inverted fingerprints on cross-examination:

> Defense Counsel: Okay. Have you ever encountered the concept or a case of a laterally-inverted fingerprint?
>
> Government Expert: Yes, I have. That's basically [the] same thing that I explained a little while ago.

(ECF No. 110 at 305.) Petitioner's counsel then questioned the expert about specific instances of laterally-inverted fingerprints:

> Defense Counsel: Okay. If I were to give you a scenario whereby I had an item, and I wrapped it multiple times with a substance like this, a clear plastic wrap, and I wrapped it tightly and applied pressure, is it possible to transfer a latent print from the wrap that is here to the wrap that's underneath through pressure or through tight wrapping?
>
> Government Expert: No.
>
> Defense Counsel: No?
>
> Government Expert: No.
> …

> Defense Counsel: Okay. Would that [transferring that latent print from one piece of wrap to the next lower piece of wrap] be possible with a substance like this, a clear plastic sticking wrap?
>
> Government Expert: No, it's not.

(ECF No. 110 at 305–06.)

Furthermore, Petitioner's counsel consulted an expert regarding the fingerprints. (Gov't Ex. 1.) After reviewing discovery with the expert, counsel concluded that calling an expert was not a strategy he would pursue. (Gov't Ex. 4.) Petitioner does not dispute that his fingerprints were identified on the evidence. (Pet'r Ex. A at 6–7.) Petitioner's argument is that trial counsel's failure to call an expert witness regarding laterally inverted fingerprints constituted ineffective assistance. As the aforementioned exchange indicates, counsel attempted to emphasize the relevance of laterally inverted fingerprints on cross-examination. The Government's Expert summarily dismissed its applicability. It was not "outside the wide range of professionally competent assistance" for Petitioner's counsel to attempt this trial strategy instead of calling a rebuttal expert. *Strickland*, 466 U.S. at 690; *Cain v. United States*, 2017 U.S. Dist. LEXIS 141641 (D. Md. Sep. 1, 2017), *appeal dismissed*, *United States v. Cain*, 2018 U.S. App. LEXIS 3400 (4th Cir. Md., Feb. 14, 2018) (denying a habeas petition and characterizing counsel's decision to address fingerprint evidence through cross-examination in lieu of calling an expert as "one of strategy"). In regard to the test enunciated by *Strickland*, the Supreme Court recently noted that the "first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 779 (2017). Petitioner has failed to satisfy that standard.

As Petitioner has not met the "performance" prong of *Strickland*, this Court does not need to address the "prejudice" prong. *Id.* at 687–88; *Moore v. Hardee*, 723 F. 3d 488, 500

(4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697) (noting that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'"). Nevertheless, even if Petitioner had demonstrated that his counsel's conduct was deficient, Petitioner fails to establish that such deficient conduct caused him to suffer prejudice. Petitioner must show that counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. In short, the second prong of *Strickland* requires Petitioner to show that absent counsel's alleged error, the result at trial would have been different. Both of Petitioner's co-conspirators testified against him at trial. (ECF No. 110.) Petitioner does not dispute that his fingerprints are on packages of cocaine. (Pet'r Ex. A at 6–7.) Phone records reflect that following the arrest of one of his co-conspirators, Petitioner ceased all phone contact with his remaining co-conspirator. Petitioner's argument attacks his trial counsel's decision not to call an expert to present an explanation of how Petitioner's fingerprints came to be on the packages of cocaine. Petitioner assumes that expert testimony regarding laterally inverted fingerprints is automatically relevant and exculpatory. Petitioner ignores both the Government Expert's testimony as to the inapplicability of laterally inverted fingerprints to the present case and the weight of all inculpatory evidence against him. Petitioner has failed to show that expert testimony characterizing laterally inverted fingerprints as a potentially exculpatory explanation would have changed the outcome at trial. Possibly giving "the jury pause about Moquete's culpability," as Petitioner argues, is not enough. (ECF No. 118-1.) As a result, Petitioner has failed to demonstrate prejudice sufficient to satisfy the second prong of *Strickland*.

7

Petitioner contends that an evidentiary hearing is necessary to determine whether trial counsel consulted with fingerprint experts. Petitioner's trial counsel, however, wrote the Government specifically stating that he had consulted with "our fingerprint consultant." (Gov't Ex. 1.) Petitioner has not raised any grounds for doubting the veracity of counsel's statement in this email. An evidentiary hearing is similarly not necessary to determine the reasonableness of trial counsel's decisions. *Strickland,* 466 U.S. at 689 (observing a presumption of reasonableness for trial strategy). Petitioner has failed to present disputed material facts requiring a hearing.[2]

## II. Failure to Have Learned Treatise Read Into Evidence

Petitioner next contends that his trial counsel's failure to have an article from the *Journal of Forensic Identification* entered into evidence constituted ineffective assistance of counsel and warrants vacatur of his sentence. Petitioner urges that a post-conviction hearing be granted in lieu of outright dismissal of this claim.

Assuming, arguendo, that the article in question is a learned treatise under F.R.E. 803(18), Petitioner is again tasked with satisfying the two prongs of the *Strickland* test. Petitioner alleges that by failing to have the treatise read into the record as permitted under F.R.E. 803(18), trial counsel neglected to utilize evidence critical to the defense. (ECF No.

---

[2] Pursuant to 28 U.S.C. § 2255(b), this Court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . ." *See, e.g., United States v. Lemaster*, 403 F.3d 216, 220–23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). A hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 U.S. App. D.C. 231 (D.C. Cir. 1998); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993).

8

118-1 at 30.) Contrary to Petitioner's contentions, trial counsel *did* strive to utilize the substance of the treatise on cross-examination:

> Defense Counsel: Okay. Have you ever consulted the *Journal of Forensic Identification*?
>
> Government Expert: Yes, I have.
>
> Defense Counsel: Okay. Would you consider that to be a learned treatise in the area of fingerprint identification?
>
> Government Expert: Yes, it is. That's one of the documents that we get quarterly with different information and different procedures for processing the evidence in.
>
> Defense Counsel: The article postulates the concept of a laterally inverted print, basically one that's transferred from one item to another. After reviewing this article, do you believe that that's something that could occur?
>
> Government Expert: Under extreme circumstances, it can be done, and, in a particular case like this, we refer to it as a forged print that, under close examination, it can be revealed that the print was – wasn't naturally placed there.

(ECF No. 110 at 306–09.)

Although trial counsel did not have the excerpt in question read into the record, he conveyed the substance of the article. In determining ineffective assistance of counsel, the central question is whether an "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 88 (quoting *Strickland*, 466 U.S. at 690). Addressing the substance of a proffered learned treatise through cross-examination in lieu of having the expert read the article into the record is not deficient performance in violation of the Sixth Amendment. *Strickland*, 466 U.S. at 689 (counseling deference to conduct by counsel that might reasonably be characterized as trial strategy).

Even if it were established that Petitioner's trial counsel's performance was deficient, Petitioner cannot demonstrate prejudice. Petitioner claims that he was prejudiced by the jury not having access to the *Journal of Forensic Identification* because the jury expressly asked to examine it during deliberations. Learned treatises are not admissible as substantive evidence under Rule 803(18), although they are frequently used in the cross-examination of experts. Fed. R. Evid. 803. The comments to the Rule expressly warn against jurors having unrestricted access to a learned treatise:

> The rule avoids the danger of misunderstanding and misapplication by limiting the use of treatises as substantive evidence to situations in which an expert is on the stand and available to explain and assist in the application of the treatise if declared. The limitation upon receiving the publication itself physically in evidence, contained in the last sentence [of Rule 803(18)], is designed to further this policy.

Fed. R. Evid. 803.

Even had the learned treatise been read into the record, the jury would not have had access to it during deliberation in accordance with Rule 308(18). Petitioner therefore cannot claim prejudice sufficient to satisfy the second prong of *Strickland*. Had the treatise been read into the record, a jury hypothetically could have requested a copy of the transcript. Such a request would likely be denied, as to grant such a request would eviscerate the policy behind the last sentence of Rule 803(18) which holds that a learned treatise may be read into evidence "but not received as an exhibit." Fed. R. Evid. 803. A trial court's decision to grant or deny such requests is subject to broad discretion. *Lambert v. Airport Connection, Inc.*, Nos. 90-1413, 90-1418, 90-1431, 1991 U.S. App. LEXIS 4425 (4th Cir. Mar. 20, 1991) (holding that a trial court retains broad discretion in responding to a jury request); *United States v. Bertoli*, 40 F.3d 1384, 1400 (3d Cir. 1994) (holding that a trial court's decision

whether or not to supply the jury with copies of written transcripts is afforded broad discretion); *United States v. Edwards*, 968 F.2d 1148, 1152 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1006 (1993) (finding that the district court has broad discretion in deciding whether or not to acquiesce to a jury's request to read a portion of the trial transcript); *Government of Canal Zone v. Scott*, 502 F.2d 566, 570 (5th Cir. 1974) (holding that trial court did not abuse its discretion in refusing jury request for testimony transcript).

The mere fact that the jury requested access to the learned treatise is not evidence of prejudice as the policy behind Rule 803(18) is expressly articulated to avoid juries having unfettered access to learned treatises as substantive evidence. In light of the powerful inculpatory evidence presented at trial, already discussed above, Petitioner has failed to establish that having the journal excerpt read into the record would have changed the outcome at trial. Petitioner therefore cannot show prejudice sufficient to satisfy the second prong of *Strickland*. Accordingly, Petitioner's second claim also fails.

## CONCLUSION

For the reasons stated above, Petitioner Moquete's Motion to Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 118) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court

denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Because reasonable jurists would not find Moquete's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: March 14, 2018

\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge